**BRODSKY SMITH**
Evan J. Smith, Esquire
Ryan P. Cardona, Esquire
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (610) 667-9029
esmith@brodskysmith.com
rcardona@brodskysmith.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET DEAKINS, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| KINDRED BIOSCIENCES, INC., RICHARD CHIN, DENISE BEVERS, LYNDON LIEN, NANXI LIU, JOSEPH MCCRACKEN, HERBERT MONTGOMERY, RAYMOND TOWNSEND, and ERVIN VESZPRÉMI, | **JURY TRIAL DEMAND** |
| Defendants. | |

Plaintiff Janet Deakins ("Plaintiff"), by and through her attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Kindred Biosciences, Inc. ("Kindred" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), and collectively with Kindred, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as a result of the Individual Defendants' efforts to sell the Company to Elanco Animal Health Incorporated ("Parent"), through Knight Merger Sub, Inc. ("Merger Sub," and collectively with Parent,

"Elanco") as a result of an unfair process and to enjoin an upcoming stockholder vote on a proposed all cash transaction acquiring all of the Company's remaining outstanding shares, valued at approximately $440 million (the "Proposed Transaction").

2.       The terms of the Proposed Transaction were memorialized in a June 16, 2021 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent, a company which is controlled by Elanco Capital, will commence a stockholder vote to acquire all of the remaining outstanding shares of Kindred's common stock at a price of $9.25 per share in cash. As a result, Kindred will become an indirect wholly-owned subsidiary of Elanco.

3.       Thereafter, on July 9, 2021, Kindred filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.       It appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.       In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on July 9, 2021 with the SEC in an effort to solicit Plaintiff to vote his Kindred shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest

for management; (b) the financial projections for Kindred, provided by Kindred to the Company's financial advisor Barclays Capital, Inc. ("Barclays"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Barclays and provided to the Board

6.      Accordingly, this action seeks to enjoin the Proposed Transaction

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Ohio and, at all times relevant hereto, has been a Kindred stockholder.

9.      Defendant Kindred is a biopharmaceutical company developing innovative biologics focused on saving and improving the lives of pets. Kindred is incorporated under the laws of the State of Delaware and has its principal place of business at 1555 Bayshore Highway, Suite 200, Burlingame, California 94010. Shares of Kindred common stock are traded on the NasdaqGS under the symbol "KIN."

10.      Defendant Richard Chin ("Chin") has been a Director of the Company at all relevant times.  In addition, Chin serves as the Company's Chief Executive Officer ("CEO").

11.      Defendant Denise Bevers ("Bevers") has been a director of the Company at all relevant times.

12.      Defendant Lyndon Lien ("Lien") has been a director of the Company at all relevant times.

13.      Defendant Nanxi Liu ("Liu") has been a director of the Company at all relevant times.

14.      Defendant Joseph McCracken ("McCracken") has been a director of the Company at all relevant times.

15.      Defendant Herbert Montgomery ("Montgomery") has been a director of the Company at all relevant times.

16.     Defendant Raymond Townsend ("Townsend") has been a director of the Company at all relevant times.

17.     Defendant Ervin Veszprémi ("Veszprémi") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 10 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Defendant Elanco is a global leader in animal health dedicated to innovating and delivering products and services to prevent and treat disease in farm animals and pets, creating value for farmers, pet owners, veterinarians, stakeholders, and society as a whole. Elanco is incorporated in Indiana and is headquartered in Greenfield, Indiana. Parent common stock is traded on the New York Stock Exchange under the ticker symbol "ELAN."

20.     Non-Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Kindred has its principal place of business is located in this District, and each of the Individual Defendants, as the Company officers or directors, has extensive contacts within this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

24.     Kindred, a commercial-stage biopharmaceutical company, engages in developing therapies for pets. Its product pipeline focuses on biologics for a range of indications primarily in dogs and cats. The Company offers Mirataz, a mirtazapine transdermal ointment for the management of weight loss in cats; and Zimeta, a dipyrone injection for the control of fever in horses. It also develops KIND-016, a monoclonal antibody for the treatment of atopic dermatitis in dogs; KIND-032, a monoclonal antibody targeting interleukin-4 (IL-4) receptor for the treatment of atopic dermatitis in dogs; KIND-025 a canine fusion protein targeting IL-4 and IL-13 for atopic dermatitis in dogs; KIND-030, a monoclonal antibody targeting canine parvovirus for the prophylactic indication in dogs; KIND-509, an antibody for canine inflammatory bowel disease in dogs; KIND-510a, a long-acting feline recombinant erythropoietin being developed for the management of non-regenerative anemia in cats; and KIND-511, an anti-tumor necrosis factor treatment for newborn foals. The Company was incorporated in 2012 and is headquartered in Burlingame, California.

25.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results.  For example, in the May 11, 2021 Press Release announcing its 2021 Q1 financial results, the Company highlighted first quarter revenues of $227,000 for Zimeta, as well as royalty revenue of $326,000 for the quarter ended March 31, 2021 with the sale of Mirataz to Dechra Pharmaceuticals completed in April 2020. This compares with royalty revenue of $122,000 in the fourth quarter of 2020.

26.     Defendant CEO Chin commented on the results in the Press Release, "'We had a strong start to the year, announcing positive results in a new long-acting interleukin-31 antibody program that has the potential to become a best-in-class therapeutic, alongside the acceptance of

efficacy data for our parvovirus monoclonal antibody program. With cash runway now through the end of 2023, we are well-positioned to realize the value of our promising late-stage pipeline.'"

27.     Despite this upward trajectory, the Individual Defendants have caused Kindred to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

28.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, the Preliminary Statement fails to indicate if a special committee of disinterested Board members was created to run the sales process, and if not, the specific reasoning for such a decision.

30.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Elanco, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

32.     On June 16, 2021, Kindred and Elanco issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**GREENFIELD, Ind. and SAN FRANCISCO (June 16, 2021) –** Elanco Animal Health Incorporated (NYSE: ELAN) and Kindred Biosciences, Inc. (KindredBio, NASDAQ: KIN) today announced the parties have entered into a definitive agreement for Elanco to acquire KindredBio, a biopharmaceutical company focused on developing novel pet therapeutics based on validated human targets. The

acquisition further accelerates Elanco's expansion in the attractive pet health market, particularly advancing Elanco's presence in the fast-growing billion-dollar dermatology category.

KindredBio brings three potential dermatology blockbusters expected to launch through 2025, as well as a number of additional R&D programs for other chronic disorders and unmet needs, including canine parvovirus. KindredBio's innovative pipeline – added to Elanco's own organic efforts – meaningfully augments Elanco's ability to launch products, gain share, and grow in the dermatology market through fully accretive revenue dollars. Elanco anticipates the combination will add approximately $100 million to its previously stated innovation revenue expectation of $500 million to $600 million by 2025, with significant opportunity beyond the period.

"This highly complementary combination is focused in one of the most exciting spaces in pet health, and one where we see a strategic imperative to build a differentiated competitive offering," said Jeff Simmons, president and CEO of Elanco. "It further accelerates our mix shift into pet health and advances our IPP strategy. Ultimately, we believe the combination positions Elanco to bring innovative solutions to veterinarians and pet owners in areas of unmet or under-served medical needs, fueling continued growth in the exciting pet therapeutic category and creating sustainable long-term value for shareholders."

The acquisition agreement builds on Elanco's existing relationship with KindredBio, which began with licensing the global commercial rights of KindredBio's late-stage treatment for canine parvovirus, and continues Elanco's proven approach as an innovation partner of choice.

"From the beginning, we have been focused at KindredBio on bringing the best medicines to our animal family members. With this transaction with Elanco, a widely respected leader in veterinary medicine with global reach, we will maximize the impact our innovative pipeline will have on improving the lives of pets," said Richard Chin, CEO and co-founder of KindredBio.

"This announcement is validation of KindredBio's achievements as one of the world's first veterinary biopharmaceutical companies, recognizing our track record in drug development and remarkably talented team," added Denise Bevers, Board director and co-founder of KindredBio. "KindredBio looks forward to continuing our mission to transform veterinary medicine as part of the Elanco family."

The deal will expand Elanco's omnichannel leadership complementing the company's e-commerce and retail position by increasing its veterinary clinic presence in a leading therapeutic category and keeping the veterinarian at the center. This continues Elanco's work to be a conduit for pet owners to the veterinarian. Dermatologic symptoms such as scratching and allergies are the number one reason pet owners visit the veterinarian today.

**Transaction Details**

Under the terms of the agreement, Elanco will acquire all outstanding stock of Kindred Biosciences at a price of $9.25 per share, or approximately $440 million, a premium of 52% based on the 30-day average. Elanco intends to fund the acquisition with pre-payable debt. Elanco expects to extend its leverage objective of under three times net leverage to Adjusted EBITDA by three months, from the end of 2023 to the end of the first quarter of 2024.

Elanco expects to unlock upside to its long-term growth algorithm, with the potential to add a full percentage point of consistent annual revenue growth, starting in 2024, and further expand the company's margin potential over time. Transaction and operating costs will be slightly dilutive to Elanco's reported and adjusted earnings per share in 2021, with the impact expected to be concentrated in the fourth quarter, and also slightly dilutive to the full year 2022.

"Kindred Biosciences' monoclonal antibody pipeline and capabilities are additive and complementary to what we've built within Elanco," said Aaron Schacht, executive vice president Innovation, Regulatory and Business Development at Elanco. "This combination will bolster our opportunity for leadership in atopic dermatitis and allow us to deliver innovation of novel biologic therapeutics to treat other unmet disease challenges in pets."

Elanco expects the transaction to close in the third quarter of 2021, subject to customary closing conditions, including approval by KindredBio's shareholders and clearance under the Hart-Scott-Rodino Antitrust Improvements Act. KindredBio's Board approved the proposed acquisition.

Elanco also reaffirmed second quarter 2021 revenue guidance of $1,225 million to $1,255 million, and full year 2021 revenue guidance of $4,670 million to $4,710 million.

***Potential Conflicts of Interest***

33.     The breakdown of the benefits of the deal indicate that Kindred insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Kindred.

34.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company

insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts:

| Name and Address of Beneficial Owner | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| **Executive Officers and Directors** | | |
| Richard Chin, M.D (1) | 3,756,667 | 7.94% |
| Denise M. Bevers (2) | 1,013,389 | 2.19% |
| Wendy Wee (3) | 370,102 | * |
| Hangjun Zhan, Ph.D. (4) | 372,848 | * |
| Joseph S. McCracken (5) | 173,140 | * |
| Herbert D. Montgomery (6) | 284,500 | * |
| Raymond Townsend, Pharm.D. (7) | 391,720 | * |
| Ervin Veszprémi (8) | 433,400 | * |
| Lyndon Lien, Ph.D. (9) | 23,500 | * |
| Nanxi Liu (10) | 24,000 | * |
| All executive officers and directors as a group (ten persons) (11) | 6,843,266 | 13.65% |
| **5% or Greater Stockholders** | | |
| BlackRock, Inc. (12) 55 East 52nd Street New York, New York 10055 | 2,672,113 | 5.88% |
| Park West Asset Management LLC (13) 900 Larkspur Landing Circle, Suite 165 Larkspur, California 94939 | 6,000,002 | 13.20% |
| Point72 Asset Management, L.P. (14) 72 Cummings Point Road Stamford, Connecticut 06902 | 3,858,103 | 8.49% |
| Integrated Core Strategies (US) LLC (15) c/o Millennium Management LLC 399 Park Avenue New York, New York 10022 | 2,579,698 | 5.68% |
| Magnetar Financial LLC (16) 1603 Orrington Avenue, 13th Floor Evanston, Illinois 60201 | 3,421,425 | 7.53% |
| Elanco Animal Health Incorporated(17) 2500 Innovation Way Greenfield, Indiana 46140 | 6,846,657 | 15.07% |

COMPLAINT

35.     Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration, not shared by Plaintiff, according to the merger agreement, however the Preliminary Proxy Statement fails to disclose an accounting of such awards or how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts.

36.     In addition, certain employment agreements with certain Kindred executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name and Principal Position | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Tax Reimbursement ($)(4) | Other ($)(5) | Total ($)(6) |
|---|---|---|---|---|---|---|
| Richard Chin, M.D. Chief Executive Officer, President and Director | 2,339,643 | 3,523,005 | 131,659 | - | - | 5,994,307 |
| Wendy Wee Chief Financial Officer and Secretary | 542,900 | 648,354 | 59,906 | - | - | 1,251,160 |
| Hangjun Zhan, Ph.D. Chief Scientific Officer | 542,900 | 637,052 | 67,405 | - | 126,700 | 1,374,057 |
| Denise Bevers Director, former Secretary and President, Chief Operating Officer | - | 110,630 | - | - | - | 110,630 |

37.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of Kindred, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

39.     On July 9, 2021, the Kindred Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.  Whether the confidentiality agreements entered into by the Company with Elanco differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

b.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Elanco, would fall away; and

c.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Kindred's Financial Projections*

41.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Kindred provided by Kindred management and relied upon by Barclays in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Barclays reviewed, "financial projections of KindredBio prepared by KindredBio's management and certain adjustments to such projections prepared at the direction of KindredBio's management".

43.    Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Kindred management provided to the Board and Barclays.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

44.    With regard to the Kindred Projections prepared by the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.    Total Revenue, including all underlying necessary metrics and assumptions, including specifically: upfront payments, milestone payments and royalties

from out-licensing of product and pipeline candidates, net product revenue in 2021 from the sale of remaining inventory and contract manufacturing and other revenues, adjusted for probability of technical and regulatory success of product candidates and pipeline candidates;

b.   EBIT, including all underlying necessary metrics and assumptions, including specifically: interest and taxes;

c.   Unlevered Free Cash Flow, including all underlying necessary metrics and assumptions, including specifically: depreciation and amortization, capital expenditures, changes in net working capital, as well as the specific inputs and bases underlying the assumed 27% tax rate.

45.   The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46.   This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.   Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Barclay's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Barclays*

48.   In the Preliminary Proxy Statement, Barclays describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The present value of Kindred's projected after-tax unlevered free cash flows for fiscal years 2021 (second half) through 2025;

      b.  The present value of the "terminal value" of Kindred as of December 31, 2025;

      c.  The present value of the expected usage of certain federal and state net operating losses carryforwards and federal and state research and development tax credits;

      d.  The specific inputs and assumptions used to determine the utilized annual perpetuity growth rate range of 3.0% to 5.0%;

      e.  The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 13.0%;

      f.  Kindred's weighted average cost of capital; and

      g.  Kindred's estimated net cash as of June 30, 2021.

50.     With respect to the *Research Analyst Price Targets*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific equity targets utilized; and

      b.  The specific identity of the equity research analysts that created the equity targets utilized.

51.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

52.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Kindred stockholder. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

53.     Plaintiff repeats all previous allegations as if set forth in full herein.

54.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

55.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

56.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

57.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth

- 15 -

above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

58.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

59.    The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

60.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

61.    Plaintiff repeats all previous allegations as if set forth in full herein.

62.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

63.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Kindred's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

65.    The Individual Defendants acted as controlling persons of Kindred within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Kindred to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Kindred and all of its employees. As alleged above, Kindred is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration

for Kindred and obtain a transaction which is in the best interests of Kindred and its stockholders, including Plaintiff;

C.    Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 16, 2021

**BRODSKY SMITH**

By: _____

Evan J. Smith, Esquire
Ryan P. Cardona, Esquire
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160
esmith@brodskysmith.com
rcardona@brodskysmith.com